Ruba Management v. Giretta Hart v. Ruba Management Mr. Wilson Yes sir May it please the court I'm here this morning on behalf of three plaintiffs Two plaintiffs with three common issues Three errors Number one, finding that the sexual harassment was not severe or pervasive Number two, finding that the defendant took prompt remedial action And number three, finding that there was no constructive discharge largely because of the first finding I would respectfully submit that the court fell into error Because it diluted or watered down the sexual harassment facts By erroneously striking some evidence and omitting other evidence Striking occurs, in the court's opinion, page 12, note 3 With respect to both Matherne and Tartt Matherne testified that she had one incident with Tom When he grabbed her and tried to kiss her on the neck Hyatt, another server there Testified that she had seen Tom grab Matherne's posterior and slap her twice The court struck that evidence Hyatt testified again about Tom that he had grabbed Ms. Tartt Roughly around the shoulders and the waist And that another cook, Tom being a cook Melvin had brushed against her with his private parts The court struck that because Ms. Tartt did not mention that in her testimony There was no legal authority cited for striking that evidence I assume that the court did so because it found Ms. Hyatt's evidence or testimony was sham I addressed that in my brief and I won't go over that now But I believe that was an error The second way that the court diluted down facts was by omitting some evidence The worst example of that occurs with Ms. Matherne With respect to the fact that when she was finally assaulted and quit, she was bruised The court recites that evidence at page 4 in its opinion But when it lists the evidence that it's going to consider on page 9, it omits the bruising To continue on with omissions with respect to Ms. Matherne, there were other omissions about Tom The court did note that Tom called her name, but she said it was a lie Let me ask you this, on this proper medial action, which I think is really at the core of this case If a report is made of some sort of incident And the employer investigates that And is unable to substantiate it because, for example, Ms. Sattard apparently kind of changed her statements But even so, they look surveillance tape, they do all that, and they conclude it didn't happen But they nonetheless move shifts so that the particular cook and the particular server are not overlapping What else is it that they're supposed to do? We ask employers to be responsive to this But if they're not able to substantiate it and they nonetheless move the shifts or whatever Then what else is there for them to do? I'm glad you asked that question, and I would like to respond That that final investigation was too little and too late It was after Ms. Matherne got beaten up and bruised There had been innumerable prior complaints that had just been blown off and not acted on But let me address the last complaint Because what the evidence shows was that Ms. Garrison, who replaced Mr. McCormick And Ms. Owen conducted an investigation They took statements, they reviewed the video, they interviewed witnesses Well, they did everything but interview the eyewitness, Ms. Hart, to this assault They did everything but recognize that Raphael, the person who perpetrated the assault Signed a confession, an admission that he had done it And that was recognized by Ms. Garrison Okay, but then they separate them Yes, but that was Is that not a remedial action? Ms. Matherne was already on medical leave when that happened She never came back to work after that The doctor put her on medical leave for two weeks Her hands were shaking so bad she couldn't do it Okay, but they took the action The fact that she chooses not to come back And I'm not taken away from how she felt and all that There was this event As I understand it, the police were called She goes on leave They say we're going to separate the two Why is that not sufficient to allow her to come back? It's too little and it's too late She is medically disabled from coming back to work She's a done deal She can't go back to work at that place And the other part of this is it has to be prompt Because they ignored many prompts Over what time period was this ignoring? You're talking about three to four weeks Three to four weeks when all hell broke loose at this place They were harassed by every cook they worked with Three or four weeks doesn't seem that long to me In the context of, I mean, we see a lot of these kinds of cases And I'm not in any way taken away from the fact that I wouldn't want to work somewhere where anybody's saying anything to me, frankly Nonetheless, I don't know that three or four weeks Is such an incredibly long period of time From start to finish of all of this Well, there is case law that says you look to the length of time And what happens when you have a short length of time The intensity of this thing is compressed I want the court to understand that they were harassed By every cook for four straight weeks in a confined space Particularly Ms. Tartt She's in the kitchen with these guys The other, Ms. Mathurin is a server And she has intermittent contact with them But it's all day, every day these guys are around her And this is what's going on The responses, the prior responses to this was McCormick didn't even record Ms. Mathurin's complaint against Tom He never put that in the book He said he'd do it When complaints came to him, it was not to worry When Ms. Mathurin and Ms. Hyatt sat down with him About the complaint, he said get over it or get another job When Ms. Hyatt got ambushed in the cooler by one of these guys His response was finish the shift or lose your job And finally, don't put me in the middle of it This is not proper media But then they're charged with going up the ladder At some point, fairly quickly, somebody did do the investigation Look at the tapes and all of that The only reason it happened was because Ms. Garrison replaced Mr. McCormick Who got fired Couldn't determine why he got fired But Mr. McCormick wasn't doing anything about it He was the one who every night was saying women are good for two things I'm going to tell you one of them, but not the other one That was every night This is the guy they're complaining to This is the guy who says don't put me in the middle of it By the time they get around That's why they said there's no one person to report to Because sometimes there is an ineffective supervisor or whatever Supposed to go up the ladder Apparently they found somebody who did an investigation and all that Why wasn't that sufficient? Because it's too little and it's too late They were already liable by the time that happened The obligation is prompt remedial action Not no action Not don't put me in the middle of it Not don't record it Not get over it Do something And they didn't do it They're liable by the time that occurs Now, the court focused on prompt remedial action There are two other points on the table here Does the court have Well, I mean, yes and no It seems to me that if there was prompt remedial action That ends the matter I understand you don't think there was  And you've made points on that I don't think on either case Either prior or at the last No, and I totally get that You've made that point I'm saying that if we conclude differently Then I think that ends the matter Yes, it does Okay Go ahead and still argue the points But I just wanted to get I don't want to argue I got that Okay, good, good Does the court wish to hear an argument on Either the severity and pervasiveness Of the sexual harassment? No And does the court wish to hear any argument on I'd like to make a couple of points About construction of discharge I've already basically addressed those with You have six minutes That's fine If I don't need the time I'm not going to use it With respect to Ms. Tartt There are two issues there She had a long history of childhood abuse And I had argued that it was Error for the court not to consider that I withdraw that argument I'll research that further And that's a bad argument I do think, however, that a reasonable woman Despite that sensitivity Would nevertheless have felt compelled To resign She was the one who saw The attack on Ms. Matherne And she was also herself Grabbed and assaulted by these cooks She was frequently referred to As a stupid puta Puta being an Anglo corruption Of the Hispanic puta I was wondering Because I had always learned P-U-T-A So thank you for clarifying that I guess I don't have to explain what it means So I would say that She had just gotten to the point where She knew what the response was In the investigation This so-called prompt remedial action Which I claim is too late And not prompt enough at all Ms. Garrison, when she talked to Ms. Matherne and Ms. Hyatt Says, what in the world are you ladies doing That's causing the men to act like this That's no investigation That's blaming the victim And Ms. Tartt knew about that She knew this was a dead-end place to work And you weren't going to get any relief You're going to be working In this atmosphere forever If there are no further questions I thank the Court And reserve the balance of my time Thank you, sir Mr. LaCour Good morning, Your Honor It's Louis LaCour here On behalf of Aruba Management I was initially going to talk About the behavior in question But I thought it better For me to go straight to your issue Yeah, that's pretty bad behavior No doubt It's been hard to defend So you might be better off With your prompt remedial action argument Your Honor, listen There's no doubt that Assuming that these things did happen And that for purposes of this argument We have to assume that The comments that were made The innuendo, the insinuation Were rude They were crude They were offensive But, you know, at the end of the day They don't rise nearly to the level That Title VII is mostly concerned with And I understand that And I will tell you That obviously The U.S. Congress Has made a choice about that And the case law has made a choice About where that line should be And I think the line is To clip the treetops You know, Title VII's going to take care Of the severe case The physical intimidation Well, this is kind of fact-bound It is So tell me Your counsel opposite says McCormick was just saying You know, look Live with it, lady This is just how it goes And that's not proper remedial action And when they finally did The investigation and all that That I was discussing It was too little too late Do you want to respond to that? Well, Your Honor It's something of a moving target Because we have these four cooks And we have the two ladies And even as between the ladies The plaintiffs There's disagreement about Who said what and when Isn't that a fact question? Well, it is And it leads me to this point, Your Honor Ruba's obligation here Is to attempt to investigate To attempt to corroborate And then to attempt to remediate Now, the law does not impose An obligation of perfect investigation And perfect remediation It says you've got to make an effort Now Well, McCormick apparently didn't He just said, you know Y'all are only good for two things And I don't even want to say What the second one is Well, let me mention That doesn't seem like much of a remedial action Let me mention I'll put it to you this way, Your Honor In the specific cases Where an investigation was conducted By Ms. Garrison And by Charlotte Owen They went to videotapes Video surveillance tapes They talked to the What's the relative timing? How long after the report The first report was made Was there any kind of investigation? The first report With respect to which plaintiff Anybody You're trying to win the whole case Well, we know Garrison Well, anybody of the two still left So we have Tartt and we have Mathern From the time that either one of them First made any kind of report to anybody Until there was any kind of investigation By anybody What's that gap? The first complaints And I could be corrected if I'm mistaken But the first complaints At least as described by Ms. Mathern Were about Mr. McCormick Saying those two unpleasant things about women Although apparently He said it to everybody Anybody who would listen to it And to be sure there was no investigation there And it wasn't until really Charlotte Owen and Ms. Garrison Got involved and this would have been I'd have to check, Your Honor I'm going to say two or three weeks into this Four week period that we've been talking about And in every instance And I think this is critical In every instance, every complaint That was made against any of these people It's always a he said, she said Which means That there has to be some way Some effort or some mechanism To try and corroborate this Because if not Any time, any employee Why not just separate them from the start? I mean, so I say the cooks are saying all this stuff And let's say the cooks say they're not saying it And of course a video isn't going to really show that You know Some things can be surreptitious, so on and so forth Why not just separate them right at that point? Why, I don't know, why do you need more? Well, the complaints by Ms. Tarr About Raphael, one of the cooks As I think you alluded to earlier They were, Raphael was sent to a different shift And Ms. Tarr was sent to a different shift Even though From the record, apparently she was able To work through this issue with him But nonetheless, they were separated And even though there was No evidence uncovered To corroborate any of this The thought apparently was, we'll just separate them And just go their own way Now, with Ms. Mathern I don't know I don't know why there wasn't an immediate separation But again, we're talking about a 20 or 30 day period where this is happening And Plaintiff would impose upon the Employer the obligation To basically do a High level investigation Of every complaint made Your Honor, that's not what Title VII Requires It just doesn't Title VII says you must investigate And you must Remediate, or make an effort To investigate and make an effort To remediate As I said, it doesn't require that perfect Remedial effort Without Recognizing This Scenario of employers doing Imperfect investigations Employers are caught in a trap They will always be caught in a trap Because plaintiffs will always say Well, you didn't talk to that guy So therefore, your attempts Are invalid, and therefore I have been harassed I don't know that the thoroughness Is the problem here, I'm just asking about the timing You know, was it prompt enough Did they respond promptly enough That's my question I don't really I'm not saying they should have talked to this person That's not my inquiry My inquiry is, he's saying It was too little too late, you waited around And the problem is That then it did apparently escalate From talking to grabbing And it, you know How long is this woman supposed to be grabbed Before she finally has enough I mean, that is a little bit much I think you put your finger on the explanation Your honor There was this period of time Where things were happening And initially, there's a complaint Made by Ms. Mathern And eventually by Ms. Tartt And it's just words being passed People saying things That they shouldn't have That were arguably harassing Although I would suggest they were not But arguably harassing And so a week or two goes by And if we put ourselves in the shoes Of somebody at IHOP At some point, you have to say Well, was this just the give and take Between co-employees in a restaurant Or was it something else And as we get into the latter part Of this period, that's when we see The investigations ramp up If you will By Ms. Owen and by Lisa Garrison And they look at videotapes And they're talking to people And throughout all of this period None of this was able to be Corroborated What about Raphael's confession Your honor, I looked And I saw the handwritten statement By Raphael I don't read Spanish And I don't know what it says And certainly if plaintiff has supplied The court with a translation I have not seen it You don't know if he's confessed I'm sorry? You don't know if he's confessed Translation you mean? Apparently there's a document in Spanish And you're saying you don't know what it says So you don't know if he's confessed No, I do not As far as the record is concerned We don't have an English confession Correct Or an English translation of a Spanish confession And I went through the record, page 1 to page 800 And I didn't see anything But I don't want to get hung up on that Well actually I think it's sort of pertinent Because apparently the police were called And I don't think anything happened after that No, this was Raphael Who had the problem with Ms. Tart And those were the two people Specifically That were separated But I thought that Raphael Also grabbed Mathern And her husband called the police And they came and did an incident report There was no incident report Yes, I recall that Your Honor I'm just checking my notes Let's see, this would have been Raphael And then that was after that That she left But it was also my understanding That the police didn't do anything beyond Make a report She said she had gone down To some office building somewhere I think and looked for a record And they told her there was no record of any incident Filed here So we don't really know what transpired We know that the police talked to the people involved Obviously They didn't pursue it further The police did not pursue it further Maybe they don't read Spanish either Because apparently Raphael confessed to an assault And no one did anything That I don't know Your Honor I don't know But certainly criminal charges were not brought against anybody There's no record of anything coming out of any of that But the Raphael Situation I think is particularly Instructive because Given the nature of the complaint That was made about him And even though you could make an argument That it may not have been harassing It was or was not There was touching and so forth But He separated over here She separated over here And nonetheless She decided she doesn't want to work at IHOP anymore Well the threat So to speak Was removed If it was a threat And she resigns anyway Which means the whole constructive discharge Claim has to fall by the wayside She was welcome to continue to work If she wanted to work On this different shift So when you put it all together And you multiply it out If you will With these people, these women, these claims This tight time period Where RUBA and IHOP Is trying to respond to what's going on I don't think you can say Fairly that under the requirements Of Title VII That they completely failed in their Obligation to investigate And make an attempt to remediate I have not seen Plaintiff has not cited the court To any case that would say If you do an imperfect investigation That's it You're dead under Title VII If you do an imperfect remediation By not sending the right party Then you're liable Under Title VII There is no case law to that effect You have to make a good faith effort And I believe that the record shows that they did Let me just say One or two more things About the behavior itself And I will be Candid with the court It's awkward for me to be here Saying that These people should not be Slapped in the head By their mothers for behaving like they did That's The way I was raised That was indefensible This kind of behavior But I would suggest to the court That One of the things that Title VII Recognizes implicitly If not explicitly Is that when you have Differing groups of people who may have Differing world views and come To an employment scenario With different biases And experiences and so forth Title VII is not Going to get involved where there is friction Between these groups because of those That dissonance In this particular case For the most part Vast majority The comments were sexual In nature and they were an expression However imperfectly And crudely, which it was Toward these two women about their sexual Interest in these women Inappropriate Undoubtedly But let's look at it realistically These women's Future at IHOP is not going to be Determined by any of these people Their Truly their working conditions And so forth are not going to be determined By these people How are you supposed to go back and pick up orders If every time you do somebody is going to make some comment Like that You can't do your job in an environment Like that Assuming the truth of the allegations Which they may not be true But you're spending a lot of time Defending No it's important I mean to me it seems like If these people Came to the table The cooks not understanding that women don't like to hear this Somebody could explain That to them that could be a remedial measure Don't do this You will be fired if you do And then see if that makes things better I agree maybe the first time somebody makes a comment You know that is and doesn't trigger title 7 Or does it trigger perhaps being fired from the job If you're a cook Or a relatively low level employee Although cooks are obviously important in a restaurant You'd say look Whatever you've been raised to do This and how we talk here I get that But you're basically saying this is appropriate That title 7 doesn't touch this And that's I realize our case law is fairly strict On what it does and doesn't touch But that's You're biting off more than you need to chew It seems to me here You're probably right Certainly I'm not suggesting it's appropriate Let's remember your honor that The record is clear and there's really no debate about this That when these individual cooks Came on They all went through the sexual harassment training They in fact did see the sexual harassment film In Spanish Which was one of the steps that Ruben and IHOP Took to try and I don't want to say pre-remediate But that's what it is really It's a prophylactic measure And they did do those things And these guys are acting Acting a fool anyway And so yeah They're making these crude remarks To the waitresses that come and pick up their meals But there is not a case That I have found Or pointed to Where Nothing more than making some sort of Crude remark when you pick up a meal That's going to satisfy Or support a title 7 claim I don't think it's there And the other thing is It's not every time they picked up an order And I know your honor was being a little Using a little hyperbole when you said that There were these specific instances In some cases for example With Ms. Tart When she got into A disagreement with some of the people Said Well she used an expletive And told them basically to take a hike And the same thing with Ms. Matherne She had a confrontation Somewhere along the line And it's in the briefing Where some of these cooks were annoying her She basically told them Get lost and they did You know should this kind of thing happen No I don't think it should But should there be A conclusion of Violation of title 7 Under these circumstances I think the district court was dead on And had it completely right And it too Recognized The inappropriateness of this kind of behavior You know I'm not insensitive None of us are insensitive to that Okay alright Unless the court has any other questions I will yield the rest of my time Thank you Mr. Wilson The court had asked How long was it between the first Complaint and this final investigation I can give the court some rough idea of that On the brief page 6 Ms. Matherne made her first complaint On March 9th And was that about McCormick or was that about these Cooks? Cooks And page I'm sorry In the record exhibits Page number 10 Her first Doctor's excuse Excuses her from work From April 11th So we know that that was Either the date of the assault or Very very shortly thereafter So you have slightly better than a month Between the first complaint and the last So you're saying that there was nothing done In between that time period Yes ma'am Now the court also questioned Whether the Confession in Spanish Was Something That should have come to the Attention of the presumably Non-speaking Ms. Garrison Non-Spanish speaking Ms. Garrison Rafael Admitted to Ms. Matherne Well actually I'm asking whether we can consider Generally my understanding is When we have evidence in the record that's in another language It needs to be translated because we all have to be Using the same language To communicate in the case I understand And so if there is something in the record in Spanish And we don't have a translation My question was can we consider it Not Ms. Garrison me as the judge here A judge here I think I have an answer to that I would like to suggest that Rafael Admitted this to Ms. Matherne Who in turn told Ms. Garrison And that's also in my brief So Ms. Garrison had knowledge of Rafael's confession And that's why I didn't put The Spanish confession in I don't read Spanish So nobody knows what this really says We don't, nobody knows then What Rafael really said We know what Ms. Matherne said he said But we don't know actually what he said In this document But that was a confession to Ms. Matherne That's admissible evidence And there was no effort to strike that from the record That's admissible evidence You're beating this horse to death Okay I mean come on One single instance here That's not the real issue in this case This issue is something far from that And we don't need to go back over that Again and again We're just beating it to death We understand your case Thank you If there are no more questions I'll excuse myself Thank you That concludes our arguments for today